# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Chris Scott,<br><br>                    Petitioner,<br><br>v.<br><br>Vicki Janssen, Warden,<br><br>                    Respondent. | Case No. 19-cv-2343 (DSD/HB)<br><br>**REPORT AND RECOMMENDATION** |

Chris Scott, MCF Rush City, 7600 525th Street, Rush City, MN 55069, Petitioner *pro se*.

Jonathan P. Schmidt, Hennepin County Attorney's Office, 300 South 6th Street Ste C-2000, Minneapolis, MN 55487, for Respondent.

Petitioner Chris Scott seeks federal habeas corpus relief from state-court convictions for second-degree murder and unlawful possession of a firearm. *See* 28 U.S.C. § 2254; *State v. Scott*, No. A17-1556, 2018 WL 4289387 (Minn. Ct. App. Sept. 10, 2018).[1] Scott argues in his habeas petition and accompanying materials that the trial court erred (1) in permitting a prospective juror who had expressed bias in favor of law enforcement to be seated for trial and (2) by insisting that Scott remain present in the courtroom so that a witness could identify him as the culprit while testifying. Because

---

[1] Further details of the offenses for which Scott was convicted are provided in the opinion of the Minnesota Court of Appeals, affirming the convictions and sentence. *See Scott*, 2018 WL 4289387, at *1–2. Because those details are not relevant to Scott's claims, they will not be recounted here.

1

the decision of the Minnesota Court of Appeals rejecting these claims was a reasonable application of federal law, it is recommended that Scott's habeas petition be denied.

**I.     Analysis**

    **A.     Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's review of Scott's habeas claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed § 2254(d)(1) and how it should be applied by federal district courts. The Supreme Court recognized that

> a state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant

> Supreme Court precedent and arrives at a result opposite to ours.

*Id*. at 405.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The Supreme Court also explained that

> [a] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 409, 411.

A writ of habeas corpus may also be available where the state court's resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct; this presumption may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000). In addition, 28 U.S.C. § 2254(e)(1) provides that

3

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and quotations omitted). Habeas relief cannot be granted unless the petitioner has identified and substantiated a specific error committed by the state courts. Moreover, the petitioner must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court. Finally, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### B.     Juror Bias

Prior to voir dire, one of the prospective jurors who was later seated at Scott's trial indicated in a pre-trial questionnaire that she would find the testimony of law-enforcement officials to be more credible than the testimony of other witnesses. *See*

4

Tr. at 94 [Doc. No. 22].[2] The following discussion about the prospective juror's questionnaire response took place at voir dire:

> THE COURT: Do you think that if you were given the instruction by me as to how to assess a credible witness, do you think you'd give—you'd be able to follow those instructions and apply the same kinds of characteristics of how to do that with each witness and treat them each equally?
>
> PROSPECTIVE JUROR: Yes, yeah.
>
> THE COURT: Okay. So tell me what you meant [in the questionnaire] when you were talking about wearing the camera.
>
> PROSPECTIVE JUROR: I don't know. I think I was just confused by the question and I think I just—I feel like there's more of a legitimacy to police officers because they are required by law to tell the truth. I don't know. I just—I just picture a police officer and I just—I have a lot of faith in their integrity. I don't know.
>
> THE COURT: Okay. Do you think that there would be— you'd be willing to listen to another witness and give them the same equal—
>
> PROSPECTIVE JUROR: Yes, yes.
>
> THE COURT: —analysis as you would a police officer?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: A police officer wouldn't automatically be believed, no matter what?
>
> PROSPECTIVE JUROR: Yes, I think that I could do that.

---

[2] Throughout the transcript, this Court cites to the pagination of the CM/ECF docketing system, not the pagination of the state-court docket itself, which appears slightly below the CM/ECF pagination.

Tr. 94-95.  On direct appeal, Scott contended—and he continues to contend in his habeas petition—that, due to her admitted initial bias in favor of law-enforcement officials, the prospective juror being seated at his trial violated his constitutional right to an impartial jury.

"Because 'courts presume that a prospective juror is impartial,' establishing juror partiality is a high hurdle."  *United States v. Needham*, 852 F.3d 830, 839 (8th Cir. 2017) (quoting *Moran v. Clarke*, 443 F.3d 646, 650 (8th Cir. 2006)).  "The standard [is] . . . whether the juror's views would prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oath."  *Wainwright v. Witt*, 469 U.S. 412, 433 (1985) (quotations omitted).  "Essentially, to fail this standard, a juror must profess [her] inability to be impartial and resist any attempt to rehabilitate [her] position."  *Needham*, 852 F.3d at 839 (quotation removed).

The Minnesota Court of Appeals concluded[3] that the prospective juror had demonstrated actual bias first when she "indicated in her questionnaire that she would find officers more credible than other witnesses" and again during oral questioning when she stated that "there's more of a legitimacy to police officers because they are required by law to tell the truth."  *Scott*, 2018 WL 4289387, at *6 (quotation omitted).  But, continued the Minnesota Court of Appeals, Scott's right to an impartial jury had not been

---

[3] The Minnesota Court of Appeals reviewed Scott's juror-bias claim through the prism of Minnesota law, which does not differ materially from federal law on this issue.  *See Scott*, 2018 WL 4289387, at *6-7 (citing *State v. Fraga*, 864 N.W.2d 615, 623 (Minn. 2015)).

6

violated because the prospective juror had been adequately rehabilitated before she had been permitted to sit at trial:

> [The prospective juror] stated unequivocally that, if given instructions on how to assess witness credibility, she would follow those instructions. She then gave an explanation for her questionnaire answer and indicated that officers are more credible because they are required by law to tell the truth. But, this statement was in regard to the reasoning behind her questionnaire answer and did not necessarily detract from her rehabilitation. She subsequently indicated unequivocally that she would analyze officer testimony the same as other testimony. When the district court asked, "A police officer wouldn't automatically be believed no matter what?" [the prospective juror] replied, "Yes, I think that I could do that."

*Scott*, 2018 WL 4289387, at *6.

As explained above, to succeed on a juror-bias claim under federal law, a defendant must establish both that a juror expressed an inability or unwillingness to be impartial and that the juror resisted rehabilitation from that position. *See Needham*, 852 F.3d at 839. The Minnesota Court of Appeals reasonably rejected Scott's claim on the second prong: the prospective juror did not resist rehabilitation. Indeed, the prospective juror in Scott's case almost could not have been more emphatic in abandoning her partiality. Upon being asked whether she could weigh equally the testimony of all witnesses, she responded "yes" three times — twice interjecting herself before the trial court could even finish its question, and once more after the question had been asked. *See* Tr. 95.

Only once after those affirmations did the prospective juror deviate from her new position, and then only barely. When asked to confirm at the close of questioning that

7

"[a] police officer wouldn't automatically be believed no matter what?", the prospective juror responded, "Yes, I think that I could do that." *Id.* Scott clings to the prospective juror's "I think" like a life raft, insisting that the two words demonstrate that she had not abandoned her earlier position of bias in favor of law enforcement. But Scott's distinction between "yes" and "yes, I think that I could do that" borders on casuistry. Assuming that there is any meaningful difference at all in the responses—which is dubious since "yes" and "I think so" are practically synonymous, especially in extemporaneous speech—the prospective juror could not have offered anything more than a statement of belief regarding how she would act at a future trial.

      Scott also relies upon *State v. Fraga*, 864 N.W.2d 615 (Minn. 2015), to argue that a prospective juror's *cogito* has been found by the Minnesota Supreme Court to be too wavering to support a finding of rehabilitation. But even leaving aside the fact that *Fraga* is not an application of federal law by the Supreme Court of the United States, *see* 28 U.S.C. § 2254(d)(1), the evidence that the prospective juror in *Fraga* could not remain impartial ran far beyond a simple "I think" during voir dire. Indeed, the prospective juror in *Fraga* went so far as to say near the end of questioning that he did *not* think he could be impartial. *See Fraga*, 864 N.W.2d at 625. The prospective juror in this matter never came near to such a statement. *Fraga* therefore does not help Scott's argument.

In sum, the rejection by the Minnesota Court of Appeals of Scott's juror-bias claim was a reasonable application of federal law. Scott's first habeas corpus claim should be denied.[4]

### C.    Courtroom Identification

After testifying at trial, one of the witnesses who had been near the scene of the murder told a prosecuting agent that Scott (who had been seated in the courtroom during the witness's testimony) resembled one of the men the witness had seen on the night of the crime. *See* Petition Ex. at 3–4 [Doc. No. 1-1]. The prosecution was permitted, over Scott's objection, to recall the witness so that he could identify Scott in front of the jury as one of the men that he had seen. Scott, through his attorney, then requested to absent himself from the courtroom so that the witness could not identify him. The request was denied. Scott claims in his habeas petition that the trial court's order that he remain in the courtroom violated his federal constitutional rights.

Scott's reasoning goes as follows:  A criminal defendant has the right under the federal Constitution to be present in the courtroom at every stage of trial. *See, e.g.*, *Illinois v. Allen*, 397 U.S. 337, 338 (1970) (citing *Lewis v. United States*, 146 U.S. 370 (1892)). Like other constitutional rights, though, the right to be present in the courtroom may be waived, either affirmatively (through the defendant's knowing and voluntary

---

[4] Scott also contends that he was not afforded a fair trial because the same prospective juror was visibly upset about having been seated and appeared to be inattentive at trial. Because Scott did not raise this argument in the state courts, the Court need not consider it. *See* 28 U.S.C. § 2254(b)–(c). In any event, the federal Constitution does not guarantee the right to *happy* jurors, only impartial ones.

decision not to attend trial) or constructively (through, for example, disruptive behavior that compels the defendant's expulsion from the courtroom). *Id.* at 342–43. So far, so good. The problem comes at the next step: Scott deduces from the fact that a criminal defendant may waive the right to be present in the courtroom to the conclusion that a criminal defendant has a constitutional right to be absent from the courtroom.

There are two fatal flaws to the syllogism. First, a federal habeas corpus petition is seldom the place for novel arguments, as a petitioner must show that the state-court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, *clearly established* Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added). An inventive line of reasoning will not help Scott here. He needs a decision from the Supreme Court of the United States clearly contrary to the conclusion of the Minnesota Court of Appeals in his matter. Scott has not cited any such decision of the Supreme Court, and his claim therefore falters under § 2254(d)(1).

Second, like most novel arguments, Scott's argument that a defendant has a federal constitutional right to flee the courtroom is simply wrong. "A defendant, lawfully charged, may be compelled to present himself for trial." *Swingle v. United States*, 151 F.2d 512, 513 (10th Cir. 1945); *accord United States v. Lumitap*, 111 F.3d 81, 84 (9th Cir. 1997) (citing caselaw supporting the conclusion that "the Government can compel a defendant's presence at trial for identification purposes."); *United States v. Moore*, 466 F.2d 547, 548 (3d Cir. 1972); *Copeland v. Walker*, 258 F. Supp. 2d 105, 139 (E.D.N.Y. 2003); *Sims v. Pfeiffer*, Case No. LA CV 15-9454 LCG, 2016 WL 6902096,

10

at *3 (C.D. Cal. Nov. 23, 2016) (collecting cases). The reason that Scott's argument has so rarely been proffered is that it has been squarely rejected each time it has been suggested. The Court should not—and, under § 2254(d)(1), cannot—be the first to reach the opposite conclusion. Scott's second claim should also be denied.

Scott has not demonstrated that the Minnesota Court of Appeals acted unreasonably in rejecting either of the two arguments put forward in this habeas corpus proceeding. Accordingly, it is recommended that Scott's habeas petition be denied and this matter dismissed.

### D.     Certificate of Appealability

Only one matter merits further comment: A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, it is highly unlikely that any other court, including the United States Court of Appeals for the Eighth Circuit, would treat Scott's current habeas corpus petition differently than it is being treated here. Scott has not identified, and this Court cannot discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review. It is therefore recommended that Scott should not be granted a COA in this matter.

## II.     RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. The petition for a writ of habeas corpus of petitioner Chris Scott [Doc. No. 1] be **DENIED**.

2. This matter be **DISMISSED**.

3. Scott not be issued a certificate of appealability.

Dated: April _____, 2020

HILDY BOWBEER
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).